**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

KNOSSOS GLOBAL SYSTEMS LLC,

      Plaintiff,

    v.

ZOHO CORPORATION PRIVATE LIMITED,

    Defendant.

Civil Action No. 2:25-cv-00414-JRG-RSP

**<u>JURY TRIAL DEMANDED</u>**

**<u>PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.     ARGUMENT..........................................................................................................................1

       A.   "PRIVATE DOMAIN"..........................................................................................1

            1.   The Claims Test *Membership*, Not *Routability* ....................................... 2

            2.   Claim Differentiation Confirms That Non-Routability Is Not
                 Inherent in "Private Domain"..................................................................... 4

            3.   The Prosecution History Confirms That Membership—Not
                 Routability—Defines "Private Domain" ..................................................... 5

            4.   Dr. Weissman's Arguments Do Not Withstand Scrutiny ............................. 5

            5.   Zoho's Construction Contradicts the Claims Themselves............................. 6

       B.   "PRIVATE ROUTING ADDRESS" IS NOT INDEFINITE..................................................7

       C.   "THE RECIPIENT ADDRESS" IS NOT INDEFINITE...................................................8

       D.   CLAIMS 24, 26, 70, AND 72 OF THE '421 PATENT ARE NOT INDEFINITE
            UNDER IPXL HOLDINGS.....................................................................................8

II.    CONCLUSION ...................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366 (Fed. Cir. 2006) ........................ 7

*HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270 (Fed. Cir. 2012) .............................. 9, 10

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).......................... 8, 9

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)........................................... 4

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) ................................................... 7

*Openwave Systems, Inc. v. Apple Inc.*, 808 F.3d 509 (Fed. Cir. 2015).......................................... 3

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................... 6

*Rembrandt Data Technologies, LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011) ....................... 9

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996).......................................... 6

Knossos Global Systems LLC ("Knossos") submits this Reply in support of its proposed constructions for the disputed terms of U.S. Patent No. 8,819,410 (the "'410 patent") and U.S. Patent No. 8,266,421 (the "'421 patent") (collectively, the "Asserted Patents"), and in opposition to the indefiniteness positions raised by Defendant Zoho Corporation Private Limited ("Zoho") in its Responsive Claim Construction Brief (Dkt. No. 43, "Zoho Br.").

Zoho's Responsive Brief identifies no lexicography and no clear disavowal that would displace the ordinary meaning of "private domain." Nor can Zoho reconcile its proposed construction with Claim 1's requirement that the server determine whether a recipient is a member by examining a record of members—a limitation Zoho's construction renders superfluous, because under Zoho's theory privacy is determined by routability before the server ever examines membership. Zoho's indefiniteness challenges fare no better: each challenged term is either inherent in the claims' recitation of network transmission or expressly described by a dependent claim. The Court should adopt Knossos's constructions and reject Zoho's indefiniteness positions.

## I.    ARGUMENT

### A.    "PRIVATE DOMAIN"

| Zoho's Proposed Construction | Knossos' Position |
|---|---|
| "a domain that is not routable via a public network" | Primary Position: No construction necessary.<br><br>**Alternative Construction** (if the Court determines construction is necessary):<br><br>"a private network community whose communications are administered by a server maintaining records of members." |

Knossos maintains that "private domain" should be given its plain and ordinary meaning and requires no construction. If the Court concludes under *O2 Micro* that construction is required, Knossos proposes: "a private network community whose communications are administered by a

server maintaining records of members." This construction is drawn from the claim language itself—Claim 1 requires the server to determine "whether the recipient is a member of the private domain by examining a record of members." '410 patent, claim 1. Zoho's proposed construction—"a domain that is not routable via a public network"—imports a routing characteristic the claims use only in dependent claims to describe optional address structures, not to define "private domain" itself. Knossos's alternative construction accounts for the specification's routing language by locating any non-routability requirement on the "private routing address" of Claims 6 and 7—not on the "private domain" term that Claim 1 defines by membership.

### 1. The Claims Test *Membership*, Not *Routability*

The central flaw in Zoho's construction is that it renders Claim 1's membership-determination limitation superfluous. Under Zoho's theory, the "private domain" is defined by whether its addresses are routable on a public network—a characteristic that exists before the server ever examines membership records. But Claim 1 does not ask whether an address is routable; it asks whether the recipient is a member. The claim requires "determining, at the server associated with the private domain, whether the recipient is a member of the private domain by examining a record of members." '410 patent, claim 1. If privacy were established by routability, this membership step would do no work. Zoho's response—that membership is merely "how the domain is used, not what makes it private," Zoho Br. at 5—does not rescue its construction; that distinction would strip the membership limitation of independent meaning.

The specification confirms this understanding, defining the private domain as "a private network community" and explaining that "private domain (e.g., private network) addresses are used to define users in a private domain, also referred to as a private network community." '410 patent at 4:30-34. Knossos's alternative construction tracks this language; Zoho's does not.

Zoho argues that the specification's statement that private domain addresses "will not route outside of the private domain" is an unconditional definition. Zoho Br. at 6-7. But Zoho's reading requires surgical extraction of a single sentence from an otherwise embodiment-specific passage. The sentence immediately preceding states: "In one embodiment, electronic information outside the private domain will not route inside the private domain." '410 patent at 3:12-16. The very next sentences likewise describe what "may" happen "[i]n one embodiment" and "[i]n another embodiment." *Id.* at 3:14-20. And the passage concludes: "In a further embodiment, some public addresses may be routable in the private domain." *Id.* at 3:22-23. The patentee thus treated every routing characteristic in this passage—both inbound and outbound—as embodiment-specific implementation details, not definitional requirements. The specification describes the *architectural effect* of a membership-and-encryption system, not the meaning of "private domain."

Zoho attempts to rescue this reading by arguing that the "some public addresses may be routable in the private domain" embodiment "concerns traffic in the opposite direction." Zoho Br. at 11. But the specification draws no such directional distinction; it uses "routable in the private domain" and "rout[able] within the private domain" interchangeably. *Compare* '410 patent at 3:22-23 *with id.* at 6:57-64. The directional gloss is Dr. Weissman's invention, not the patentee's.

Zoho invokes *Openwave Systems, Inc. v. Apple Inc.*, 808 F.3d 509 (Fed. Cir. 2015), arguing that the specification's criticism of content-only encryption disclaims constructions covering encrypted email with routable addresses. Zoho Br. at 8-9. But the standard for disavowal is "exacting": the specification must be "so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." 808 F.3d at 513. In *Openwave*, the specification was "rife" with disparaging remarks that "permeate[d]" the document. *Id.* at 514. Nothing comparable appears here. The specification criticizes content-only encryption

because it leaves addresses publicly exposed—supporting Knossos's position that the "private domain" requires server-administered membership, which conventional encrypted email lacks. The asserted claims add address privacy *on top of* content encryption; disparaging prior art that made only content private does not disclaim systems that do both.

### 2. Claim Differentiation Confirms That Non-Routability Is Not Inherent in "Private Domain"

Claim differentiation confirms that non-routability is not inherent in "private domain." The routing-related limitations in Claims 6 and 7 are directed to the *private routing address*—not the private domain. Zoho's construction collapses this distinction by attributing an address-level routing characteristic to the domain itself. Claim 6 recites a specific address structure rendering "the private routable address as a whole is not routable within the public domain of the network." '410 patent, claim 6. "[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).

Zoho recasts its construction as a "genus" that dependent claims merely narrow. Zoho Br. at 9. But Zoho's own expert concedes that no particular implementation—not the PTLD, not the two-portion address, not encryption—is itself the meaning of "private domain." Weissman Decl. ¶ 71. If none of those mechanisms defines the term, Zoho's genus is untethered from any claim language. And Zoho's attempt to turn claim differentiation against Knossos fails: Claim 15 refines the *consequence* of the membership determination Claim 1 already recites, while '421 Claim 20's determination step is not redundant of '421 Claim 1 at all—exactly the opposite of the concern Zoho invokes.

### 3.   The Prosecution History Confirms That Membership—Not Routability—Defines "Private Domain"

The prosecution history confirms that membership—not routability—defines "private domain."  The examiner rejected the original claims as anticipated by Langford, mapping Langford's "secured group" onto "private domain" without reference to routability.  Ex. C at KNOS-ZOHO001024-1025.  The applicant overcame that rejection by adding membership-based limitations—not routability limitations.  Ex. D at KNOS-ZOHO001054-1055; KNOS-ZOHO001062.  The examiner agreed that "the proposed amendments directed towards communication between members of a private domain would overcome the Langford reference."  *Id.* at KNOS-ZOHO001062.  If "private domain" already meant "not routable via a public network," the membership amendments would have been unnecessary; the applicant could simply have argued that Langford's system used publicly routable addresses.

### 4.   Dr. Weissman's Arguments Do Not Withstand Scrutiny

Dr. Weissman's declaration does not withstand scrutiny.  His argument that the specification's non-routability language is unconditional ignores that the very next sentences describe what "may" happen "[i]n one embodiment."  '410 patent at 3:9-23.  His reliance on RFC 1918 fares no better: RFC 1918 addresses IP addresses, not domain names.  And his own concessions undermine him: he acknowledges that non-member notifications and inter-community "treat[y]" traffic traverse the public Internet.  Weissman Decl. ¶¶ 59-60.

Zoho's extrinsic evidence does not salvage its position.  RFC 1918 defines address allocation for private IP addresses—not the membership-based "private network community" the specification describes.  '410 patent at 4:30-34.  Dr. Weissman acknowledges that "RFC 1918 addresses IP addresses rather than domain names," Weissman Decl. ¶ 67, yet relies on it to define a domain-level term.  Extrinsic evidence may not be used to contradict claim meaning that is

unambiguous in light of the intrinsic evidence.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (*en banc*).

### 5.    Zoho's Construction Contradicts the Claims Themselves

Zoho's construction cannot be reconciled with the claims themselves.  Claim 1 of the '410 patent requires "transmitting the electronic information, with the security package, over an electronic network to the recipient."  '410 patent, claim 1.  Claim 2 specifies that "the electronic network is the Internet."  *Id.*, claim 2.  Claim 3 specifies that "the electronic network is a publicly accessible network."  *Id.*, claim 3.  The claims thus expressly require transmission over the public Internet to the recipient—the very routing via the public network that Zoho's construction would forbid.

Dr. Weissman's own explanation confirms the point.  He describes the system as "transmitting the encrypted message to a server of the private domain 'using a communication protocol associated with the network, such as, for example, TCP/IP protocol.'"  Weissman Decl. ¶ 62 (quoting '410 patent at 7:15-26).  The carrier packet, he explains, "traverses the public Internet" and "is itself addressed to the publicly routable address of the private-domain server."  Weissman Decl. ¶ 62.  Zoho thus effectively concedes that communications associated with the private domain traverse the public Internet—confirming that the real dispute is whether "private domain" is defined by membership or by address-level routability.  If the "private domain" were defined as "a domain that is not routable via a public network," this architecture would be impossible—yet it is precisely what the specification describes and the claims require.

The specification thus expressly discloses transmission via TCP/IP over the public Internet to a server of the private domain.  This is fatal to Zoho's construction.  A construction that excludes the specification's preferred embodiment is "rarely, if ever, correct."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

---

In sum, the invention enables secure communications *over* public infrastructure; Zoho's construction inverts that architecture by treating implementation safeguards as the definition of the claimed "private domain." The term should be given its plain and ordinary meaning. If the Court concludes construction is required, it should adopt Knossos's alternative construction, which is drawn from the claim language and avoids importing address-level routing characteristics into a term the claims define by membership. Zoho's proposed construction should be rejected.

### B. "PRIVATE ROUTING ADDRESS" IS NOT INDEFINITE

| Zoho's Position | Knossos' Position |
|---|---|
| Indefinite. | No construction necessary. Not indefinite. |

"Private routing address" is not indefinite. Zoho argues that Claims 5 and 6 lack antecedent basis because Claim 1 does not expressly recite "a private routing address." Zoho Br. at 14-16. But express antecedent basis is not required; it may be supplied by implication where the referent is reasonably ascertainable. *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006). The concept of a "private routing address" is inherent in Claim 1's recitation of transmission within a "private domain": routing within a private domain requires an address. Claim 19 confirms this by expressly reciting "transmitting the electronic information with a private routing address," and the Abstract states that electronic information "is transmitted over an electronic network with a private routing address."

Claim 6 removes any doubt, describing in detail the structure of a private routing address: "a first portion" that is "publicly routable" and "a second portion" that is "routable within the private domain," such that "the private routable address as a whole is not routable within the public domain of the network." '410 patent, claim 6. A term described with this precision does not leave a person of ordinary skill without reasonable certainty as to its scope. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

### C. "THE RECIPIENT ADDRESS" IS NOT INDEFINITE

| Zoho's Position | Knossos' Position |
| --- | --- |
| Indefinite. | No construction necessary.  Not indefinite. |

"The recipient address" is not indefinite.  Zoho argues that Claim 10 and Claims 12-13 of the '421 patent lack antecedent basis because Claim 1 recites only "a recipient."  Zoho Br. at 16-18.  But the concept of a recipient address is inherent in Claim 1's recitation of "transmitting the electronic information ... to the recipient"—one cannot route information to a recipient without addressing it.  Claim 8 confirms this by expressly reciting "examining a recipient address."  '410 patent, claim 8.  Whether that address is ultimately a publicly routable address or a private routing address, Claim 8's introduction of "a recipient address" together with Claim 1's transmission limitation supplies the single ascertainable referent; Claim 10's conditional limitation merely selects which branch applies.

Zoho notes the applicant amended a parallel claim from "the" to "a" recipient address during prosecution, while Claim 10 was not similarly amended.  Zoho Br. at 17-19.  But definiteness under *Nautilus* turns on what a person of ordinary skill would understand—not on whether an examiner's edits were applied uniformly.  Given Claim 8's express context, Zoho cannot meet its clear-and-convincing burden.

### D. CLAIMS 24, 26, 70, AND 72 OF THE '421 PATENT ARE NOT INDEFINITE UNDER IPXL HOLDINGS

| Zoho's Position | Knossos' Position |
| --- | --- |
| Indefinite as improperly directed to an apparatus and use of that apparatus. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). | No construction necessary.  Not indefinite. |

Zoho argues that Claims 24, 26, 70, and 72 are indefinite hybrid claims under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005), because they allegedly recite acts of a sender or recipient.  Zoho Br. at 20-22.  But Claim 24 recites "[a] machine-readable

medium storing instructions ... which, when executed by a processor, cause the processor to perform a method," and Claim 26 similarly recites instructions that "cause the processor to" perform operations. Each limitation describes what instructions cause the processor to do—not a separate act a sender or recipient must perform.

The Federal Circuit has repeatedly upheld apparatus claims conditioned on functional or environmental language. *See HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1277-78 (Fed. Cir. 2012) (claims reciting network functions as "the underlying network environment" were not improper hybrid claims). The conditions Zoho identifies—a sender having logged in, a sender having subscribed—describe the environment in which the claimed system operates, not an independent third-party act. This is unlike *IPXL*, where the claim affirmatively required that "the user uses the input means," *IPXL*, 430 F.3d at 1384, or *Rembrandt Data Technologies, LP v. AOL, LLC*, 641 F.3d 1331, 1339-40 (Fed. Cir. 2011), where an apparatus claim ended with the method step of "transmitting."

Zoho's "incompatible actors" argument regarding Claims 70 and 72 describes the ordinary operation of a client-server email system, not a hybrid claim. Claims 70 and 72 are independent claims—a "machine-readable medium" (claim 70) and a "data processing system" (claim 72)— whose instructions cause the processor to transmit a request to a server and receive electronic information in response. *See* '421 patent, claim 70 ("transmitting a request to a server over a network for receiving electronic information from the server" and "receiving the electronic information from the server in response to the request"); claim 72 (same, using "transmit" and "receive"). Both describe what the recipient's processor is caused to do; neither recites an act the sender *must* perform. The "wherein" clauses Zoho relies upon—that the electronic information "is sent by a sender having a subscription" and that the sender "has logged into the server"—

---

describe the network environment in which the recipient's system operates, a condition precedent, not a method step. *See HTC Corp.*, 667 F.3d at 1277-78 (holding that claim language describing "the underlying network environment in which the mobile station operates" did not constitute method steps and thus did not render claims indefinite). Claims 24, 26, 70, and 72 are not indefinite.

## II.     CONCLUSION

For the foregoing reasons, and those set forth in Knossos's opening claim construction brief (Dkt. No. 41), the court should adopt Knossos's proposed constructions for each disputed term, find that "private domain," "private routing address," and "the recipient address" are not indefinite, and reject Zoho's indefiniteness challenge to claims 24, 26, 70, and 72 of the '421 patent.

Dated: July 16, 2026

Respectfully submitted,

By: /s/ C. Matthew Rozier

C. Matthew Rozier (CO 46854)*
1001 Bannock Street, Suite 241
Denver, Colorado 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Andrew D. Gordon-Seifert (OH 0094)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (401) 954-7420
Email: andrew@rhmtrial.com

**Attorneys for *Plaintiff KNOSSOS GLOBAL SYSTEMS LLC***

\* Admitted to the Eastern District of Texas

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.

Dated: July 16, 2026

Respectfully submitted,

By: /s/ C. Matthew Rozier

C. Matthew Rozier